**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **KIMYEN T. NGUYEN,** § | |
| § | |
| **Plaintiff** § | |
| § | **Civil Action No. 3:03-CV-0914-K** |
| v. § | |
| § | |
| **COMMISSIONER OF SOCIAL SECURITY,** § | |
| § | |
| **Defendant.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of Title 28, United States Code, § 636(b)(1)(B), and an *Order* of the District Court in implementation thereof, the subject cause has been referred to the undersigned United States Magistrate Judge for recommendation. Before the Court are *Plaintiff's Motion for Summary Judgment* and *Plaintiff's Brief in Support of Motion for Summary Judgment* ("Pl.'s Br."), filed February 12, 2004; *Commissioner's Motion for Summary Judgment* and *Defendant's Response to Plaintiff's Brief in Support of Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment*, filed April 8, 2004; and *Plaintiff's Reply Brief*, filed June 24, 2004. Having reviewed the evidence of the parties in connection with the pleadings, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **DENIED** and that *Commissioner's Motion for Summary Judgment* be **GRANTED**.

## I. BACKGROUND[1]

*A.     Procedural History*

Kimyen T. Nguyen ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits under Title XVI of the Social Security Act. On November 16, 1999, Plaintiff filed an application for disability benefits. (Tr. at 84-86.) Plaintiff claimed she was disabled due to arthritis, dizziness, back pain, and stomach ulcers. (Tr. at 88.) Plaintiff's application was denied initially and upon reconsideration. (Tr. at 64-69, 71-73.) Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 74.) A hearing, at which Plaintiff personally appeared and testified, was held on October 4, 2000. (Tr. at 19-61). On November 22, 2000, the ALJ issued her decision finding Plaintiff not disabled. (Tr. at 9-18.) The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 4-7.) Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 4.) Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on May 2, 2003.

Subsequent to the application for benefits at issue in this case, Plaintiff was found to be disabled. (Pl.'s Br. at 3.) Therefore, the issue raised before this Court is whether substantial evidence supports the Commissioner's finding as to Plaintiff's allegations of disability from November 10, 1999, through November 22, 2000. *Id.*

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

B.   *Factual History*

  1.   **Age, Education, and Work Experience**

Plaintiff was born on September 11, 1943. (Tr. at 23.) At the time of the hearing before the ALJ she was 57 years old. *Id*. She had completed twelve years of school in Vietnam. *Id*. Plaintiff did not speak English. *Id*. Her past relevant work experience included work as a sewing machine operator. (Tr. at 55.)

  2.   **Medical Evidence**

On December 9, 1994, Plaintiff was seen at Parkland Memorial Hospital's outpatient clinic for lower back pain. (Tr. at 283.) Plaintiff complained of sharp pain radiating to her upper back. *Id*. Plaintiff reported that she had back pain for seven years and that she wore a back brace. *Id*. She was taking Norgesic Forte and Relafen. *Id*. Plaintiff was diagnosed with chronic lower back pain, advised to use moist heat, and given instruction in range of motion exercises. *Id*.

Plaintiff was examined by David R. Webb, Jr., M.D., on March 11, 1998. (Tr. at 300-01.) She complained of neck and low back pain and headaches. *Id*. Dr. Webb noted that Plaintiff got on and off of the examining table slowly. (Tr. at 301.) An examination of her cervical spine showed tenderness in both posterior triangles of the neck with splinting and guarding but no frank spasm. *Id*. Plaintiff had ten degrees loss of flexion and five degrees loss of right and left lateral bending in her neck. *Id*. Plaintiff's lumbosacral spine showed some tenderness at L5-S1, but no spasm. *Id*. There was five degrees loss of flexion and extension. *Id*. X-rays of Plaintiff's cervical spine and lumbosacral spine showed no evidence of fracture or dislocation. *Id*. Dr. Webb's impression was that Plaintiff had chronic cervical syndrome with headaches and chronic lumbar syndrome. *Id*.

On November 8, 1999, Plaintiff was examined by Dr. Cooley. (Tr. at 297.) Plaintiff complained of headaches. *Id*. Dr. Cooley diagnosed tension headache. *Id*. Plaintiff returned to Dr. Cooley on December 3, 1999, complaining of back and neck pain. *Id*. Dr. Cooley noted that the flexion and extension in Plaintiff's neck was normal, but that the rotation to the right was limited approximately fifteen degrees and to the left was limited approximately twenty degrees. *Id*. Plaintiff also had spasms in the paracervical area. *Id*. Plaintiff was diagnosed with headache and muscle spasm and prescribed Naprelan and Robaxin *Id.*

A consultative exam was performed by Linh Nguyen, M.D., on January 13, 2000. (Tr. at 141-43.) Plaintiff complained of constant pain on the right side of her body which interfered with her ability to sleep. (Tr. at 141.) Plaintiff wore a back brace. *Id*. She also complained of recurrent headaches. *Id*. Plaintiff told Dr. Nguyen that she had to quit her job due to dizziness caused by sitting for long periods of time. (Tr. at 142.) Plaintiff had difficulty climbing on to the exam table and moved slowly. *Id*. She refused to do any tandem gait, bending, or climbing due to pain. *Id*. Plaintiff appeared to walk without difficulty. *Id*. X-rays of Plaintiff's lumbar and cervical spine were within normal limits. (Tr. at 143.)

On January 17, 2000, Plaintiff was examined by Jennifer Kampas, M.D. (Tr. at 161-62.) Plaintiff complained of chronic headache, neck and back pain. (Tr. at 161.) Plaintiff's neck was supple with full range of motion, but moderate trapezius spasm was noted. *Id*. There was moderate to severe paraspinal spasm in Plaintiff's lower back. *Id*. Plaintiff also had mild to moderate limitation on range of motion at the waist. *Id*. She was found to have chronic low back pain, chronic headache, and fatigue. (Tr. at 162.) Plaintiff was prescribed Naproxen and Roabaxin. *Id*. At a follow-up visit on March 15, 2000, Dr. Kampas noted mild trapezius spasm without point

-4-

tenderness, and some thoracic and lumbar paraspinous spasm without point tenderness. (Tr. at 154.) Plaintiff had full range of motion at the waist. *Id.* She was advised to continue her medications. *Id.*

On January 26, 2000, Plaintiff began receiving treatment at the Parker College of Chiropractic [sic]. (Tr. at 217-18.) Plaintiff complained of pain in her neck, lower back, right shoulder, and knee. (Tr. at 217.) From January through August 2000, Plaintiff received chiropractic treatment for her pain. (Tr. at 164-218, 305-309.)

### 3. **Hearing Testimony**

A hearing was held before the ALJ on October 4, 2000. (Tr. at 19.) Plaintiff appeared personally and was represented by an attorney. *Id.* Plaintiff testified that she was 57 years old and had completed twelfth grade in Vietnam. (Tr. at 23.) She could read and write only a little in English. *Id.* Plaintiff's past work included positions as an assembler and a seamstress. (Tr. at 25.)

Plaintiff testified that she was unable to work due to neck and back pain and headache which occurred after sitting for a while. (Tr. at 26.) She stated that she was able to sit or stand for ten to fifteen minutes. (Tr. at 26-27.) Her pain made it difficult to sleep. (Tr. at 30.) She did not cook, clean, or do laundry. (Tr. at 31.) Plaintiff stated that she left the house only to go to church. (Tr. at 31-32.)

A medical expert ("ME") reviewed the record and testified as to Plaintiff's impairments. (Tr. at 47-54.) In discussing Plaintiff's complaints of pain, the ME stated

> Her previous injury could have set up a myofascial pain syndrome, which is not diagnosed by any of the doctors. The history is suggestive of that but no one has really described trigger points and tender points. So a localized fibromyalgia or myofascial pain syndrome. While I suspect them from the record, there's not enough to make the diagnosis.... So I – as far as the medically determinable illnesses, I don't have any to account for the pain. I have a strong suspicion of one but I don't really

> have one which is documented by the record....
>
> If I take the record at fact value as not showing any medically determinable illness, then I don't have an explanation for the pain and I have no reason to impose any limitations on function. However, if she does have a reason for the pain and if myofascial pain syndrome clearly is there, then I think the record would support limiting her in the following ways. Lifting, I think would be down to 10 pounds maximum, not less than 10 pounds frequently. Standing and walking would be between two and four hours. Sitting would be six hours but there would be some necessity because of pain for her to change positions.

(Tr. at 50-51.)

A vocational expert ("VE") testified and stated that Plaintiff's past relevant work as a sewing machine operator was unskilled and light in strength demand. (Tr. at 55.) Plaintiff's past relevant work as a circuit assembler was unskilled and sedentary in strength demand. (Tr. at 56.)

The ALJ asked the VE to assume an individual such as Plaintiff who could lift ten pounds on occasion and less than ten pounds frequently, could stand or walk for two to four hours in an eight hour day, and could sit for up to two hours at a time before needing to change positions. (Tr. at 56.) The VE testified that such an individual could perform Plaintiff's past work as a circuit assembler. (Tr. at 56-57.) However, the VE stated that such an individual could not perform Plaintiff's past work as a sewing machine operator. (Tr. at 59.)

## C.     *ALJ's Findings*

The ALJ denied Plaintiff's application for benefits by written opinion issued on November 25, 2000. (Tr. at 10-18.) The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. at 14.) The ALJ determined that Plaintiff's fibromyalgia constituted a severe impairment. *Id.* However, the ALJ found that Plaintiff's impairments did not, singly or in combination, meet or equal the severity of any impairment in the Listings. (Tr. at 15.) Additionally, the ALJ found that Plaintiff's allegations of pain were not

credible due to the fact that the evidence in the record "fail[ed] to document an impairment which would be expected to produce the degree of pain alleged...." (Tr. at 16.)

The ALJ concluded that Plaintiff retained the residual functional capacity to lift up to twenty pounds occasionally and ten pounds frequently, and to occasionally climb, balance, stoop, kneel, crouch, and/or crawl. *Id*. Accordingly, the ALJ concluded that Plaintiff was able to perform a full range of light work activity. *Id*. Because Plaintiff's past work as a sewing machine operator was light and unskilled, the ALJ determined that she could return to her past relevant work, both as she performed it and as it is generally performed in the national economy. *Id*. As a result, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. at 17.)

## II. ANALYSIS

*A.     Legal Standards*

### 1.     Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding

of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

**2.     Disability Determination**

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

      3.      An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

      4.      If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

      5.      If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.**    ***Issues for Review***

      Plaintiff presents the following issues for review:

      (1)      The ALJ's RFC is not supported by the testimony of the medical expert;

      (2)      The ALJ's RFC was not supported by the opinions of the state agency medical consultants;

      (3)      The ALJ's RFC is not supported by any expert medical assessment in the record; and

      (4)      The Medical-Vocational Guidelines mandate a finding of disabled.

## C.     *Issue One: Medical Expert Testimony*

Plaintiff asserts that the ALJ's finding that Plaintiff retained the RFC to perform a full range of light work was not supported by the testimony of the medical expert. (Pl.'s Br. at 6.) Plaintiff claims the ALJ erred in "dismissing [the ME's] opinions out of hand" and not including the limitations found by the ME in her finding of Plaintiff's RFC. (Pl.'s Br. at 9).

An ALJ is not required to obtain the testimony of an ME. 20 C.F.R. § 404.1527(f)(2)(iii) ("[ALJs] *may* also ask for and consider opinions from medical experts.") (emphasis added). On the other hand, the ALJ does have a duty to evaluate every medical opinion received. *See* 20 C.F.R. § 404.1527(d). However, the ALJ is entitled to reject the opinion of a non-examining medical expert in favor of other physicians' opinions and evidence in the record. *Haynes v. Barnhart*, 416 F.3d 621, 631 (7th Cir. 2005).

Plaintiff's allegations of error focus on the following statement by the ME concerning Plaintiff's RFC:

> if she does have a reason for the pain and if myofascial pain syndrome clearly is there, then I think the record would support limiting her in the following ways. Lifting, I think would be down to 10 pounds maximum, not less than 10 pounds frequently. Standing and walking would be between two and four hours. Sitting would be six hours but there would be some necessity because of pain for her to change positions.

(Tr. at 50-51.) The ME acknowledged that this part of his opinion was speculative and unsupported by the evidence in the record. *Id*. He specifically stated that, "[i]f I take the record at fact value as not showing any medically determinable illness, then I don't have an explanation for the pain and *I have no reason to impose any limitations on function*." *Id*. (emphasis added). He noted that the record did not support any finding as to a medically determinable illness accounting for Plaintiff's subjective complaints of pain. *Id*. The ME acknowledged that his opinion as to Plaintiff's RFC if

-10-

she had a diagnosis of myofascial pain syndrome was not based upon evidence in the record, but on his suspicions.  *Id.*  The only opinion based upon the evidence in the record offered by the ME as to Plaintiff's RFC was that she had no functional limitations.  *Id*.  For this reason, the ALJ did not err in failing to consider that part of the ME's opinion pertaining to myofascial pain syndrome as evidence.

### D.     Issue Two: State Agency Medical Consultants

Plaintiff contends that the ALJ's assessment of Plaintiff's RFC is in error because it is not supported by the opinions of the state agency medical consultants.  (Pl.'s Br. at 10.)  In particular, Plaintiff notes that in a Physical Residual Functional Capacity Assessment completed on February 10, 2000, a non-examining state agency physician found that Plaintiff was limited in the ability to push and/or pull in her upper and lower extremities.  (Tr. at 147.)  Additionally, the agency physician found that she was occasionally limited in her ability to balance.  (Tr. at 148.)  The ALJ's RFC did not include those limitations and her decision did not reference the agency physician's opinion.  A Case Assessment Form was completed by another non-examining state agency physician on May 11, 2000.  (Tr. at 219.)  The agency physician concluded that Plaintiff had a non-severe impairment and that her alleged limitations were not fully supported by the evidence.  *Id*.  The ALJ's decision did not reference this opinion.

Although ALJs "are not bound by any findings made by State agency medical or psychological consultants," they must consider such findings as opinion evidence.  20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).  An ALJ may not ignore the opinions of State agency medical consultants and must explain the weight given those opinions in their decisions.  SSR 96-6p.  However, even where the record demonstrates procedural improprieties, a court will not remand

unless the substantial rights of a party have been affected. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Remand is appropriate only if the improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision. *Id.*

Here, the ALJ erred in failing to reference the opinions of the state agency physicians and to explain the weight given those opinions. However, Plaintiff has failed to allege or show prejudice resulting from that error. Plaintiff does not claim that she actually does have limitations in her ability to push/pull or balance which affect her ability to perform her past work. Nor does Plaintiff point to any evidence in the record supporting such a finding. Additionally, the fact that the ALJ failed to reference an opinion finding Plaintiff to have no severe impairments could not possibly have resulted in prejudice to Plaintiff. Because no prejudice resulted from the ALJ's failure to reference the opinions of the state agency physicians, the Court finds no reversible error.

### E.     Issue Three: RFC Assessment

Plaintiff claims that the ALJ's RFC assessment was in error because it was not supported by any expert medical assessment in the record. (Pl.'s Br. at 10.) Plaintiff asserts that the RFC assessment "must be supported by a medical opinion of the claimant's functional capabilities...." *Id*.

In determining a claimant's RFC, "[u]sually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. The absence of such a statement, however, does not, in itself, make the record incomplete." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). If substantial evidence in the record supports an ALJ's determination of a plaintiff's RFC, there is no error. *Gutierrez v. Barnhart*, 2005 WL 1994289, *7 (5th Cir. Aug. 19, 2005). The ALJ alone is responsible for determining a plaintiff's RFC. *Ripley*, 67 F.3d at 557.

Additionally, the courts will not reverse a case due to an ALJ's failure to fully develop the record absent a demonstration of prejudice. *Gutierrez*, 2005 WL 19994289 at *8. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

The record in this case contains no opinion from a treating source as to Plaintiff's functional limitations. However, the record does contain a Physical Residual Functional Capacity Assessment by a state agency physician. (Tr. at 146.) That assessment found that, based upon the medical evidence in the record, Plaintiff's allegations of pain were not credible and that she was limited only in her ability to push/pull, climb, and balance. (Tr. at 147-48.) Additionally, the ME stated that, taking the record at face value, he found no reason to impose any limitations on Plaintiff's residual functional capacity. (Tr. at 51.) Both the state agency physician and the ME explained why the evidence supported their conclusions. Those opinions constitute substantial evidence upon which the ALJ could base a residual functional capacity determination. *See Bodin v. Barnhart*, 2004 WL 3237480, *4 (E.D. Tex. Aug. 11, 2004).

In setting forth Plaintiff's RFC, the ALJ found Plaintiff to be more limited than the opinions expressed by the medical sources. (Tr. at 16.) She concluded that Plaintiff retained the residual functional capacity to lift up to twenty pounds occasionally and ten pounds frequently, and to occasionally climb, balance, stoop, kneel, crouch, and/or crawl. *Id*. The ALJ failed to explain why her RFC finding differed from those of the medical sources. The Court assumes, *arguendo,* that the ALJ erred in finding Plaintiff more limited than the opinions of the medical sources without basing her finding on other evidence in the record. Nevertheless, Plaintiff has failed to argue or show that

such error prejudiced her in any way. Accordingly, any such error provides no basis for reversal.

### F.     *Issue Four: Medical-Vocational Guidelines*

Plaintiff asserts that, had the ALJ properly considered the ME's opinion, Plaintiff would have been found unable to return to her past work, and the Medical-Vocational Guidelines would mandate a finding of disabled at step five. (Tr. at 12-13.)

As noted in Section "C" above, the ALJ did properly consider the ME's opinion as to the limitations imposed by Plaintiff's medically determinable impairments. Because substantial evidence supports the ALJ's conclusion that Plaintiff was able to return to her past work, there is no need for the Court to consider the application of the Medical-Vocational Guidelines.

### III.   RECOMMENDATION

Based on the foregoing reasons, this Court recommends that Court recommends that *Plaintiff's Motion for Summary Judgment* be **DENIED**, that *Commissioner's Motion for Summary Judgment* be **GRANTED**, and that the decision of the Commissioner be wholly **AFFIRMED**.

**SO RECOMMENDED**, on this the 11th day of October, 2005.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).  Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE